UNITED STATES of America, Plaintiff,

v.

AMERICAN NATIONAL BANK & TRUST COMPANY, as Trustee Under Trust No. 25919, Beneficiaries of Trust No. 25919, Sack Realty, Defendants.

No. 83 C 2447.

United States District Court, N.D. Illinois, E.D.

Nov. 3, 1983.

Mary Anne Mason, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

John K. Kallman, Ann E. Merryfield, Rudnick & Wolfe, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

This action was brought by the United States to foreclose a mortgage on property commonly known as Drexel Towers South. The Secretary of Housing and Urban Development (HUD) acquired the mortgage through assignment in December, 1973. American National Bank, the trustee of the property; the beneficial owners; and Sack Realty, the managing agent of the property, are joined as defendants.

The action was tried on September 19 and 20, 1983. After trial, we found defendants to have defaulted on the mortgage. We also decided that defendants had not proved their affirmative defense that HUD had failed to approve rent increases in a timely manner.[1] The sole issue remaining is the extent of property to be foreclosed.

■ The property in question, Drexel Towers South (the project), is held in trust by American National Bank. The original mortgage on the property was executed on May 9, 1969. Through assignment HUD acquired the mortgage in December, 1973. The defendants were then in default under the existing mortgage. To relieve them of the default HUD agreed to modify the mortgage. The mortgage was subsequent-

---

1. Because defendants failed to prove that HUD had not approved rent increases in a timely manner, we did not rule on whether such a defense is legally sufficient.

ly modified on numerous occasions. The final modification occurred in June, 1980. In December, 1980, defendants defaulted. Defendants have made no payments since. During this period of default, the United States advanced defendants sufficient funds to pay property taxes. Also after the default, defendants refused, due to lack of funds, to make repairs on the project which a HUD investigator had found necessary. Nevertheless, during the period of default, large sums of money were invested in the project's name in United States treasury bills.[2] An auditor's reports reflect that in 1980, $9,253 in project funds were used to purchase treasury bills, Plaintiff's Trial Exhibit (Pl.Tr.E.) N at 9; [3] in 1981, $55,876, Pl.Tr.Ex. K at 9; and in 1982, $49,454, Pl.Tr.Ex. L at 9. It is these treasury bills on which this controversy centers. Both the United States and defendants claim they are entitled to the treasury bills. Defendants argue that the United States is entitled only to the real property described by the mortgage and not receipts therefrom. The United States argues that under the terms of the mortgage and the regulatory agreement, it is entitled to personalty derived from the project.

On September 12, 1983, we granted HUD immediate possession of "the mortgaged property, real, personal and mixed, including the bank accounts associated with or derived in any way from the mortgaged property, tenant's security deposits, and all property of the mortgagor of any nature in, on, connected with or used in the operation of the mortgaged property" during the pendency of this action. *United States v. American National Bank & Trust Co. of Chicago*, 573 F.Supp. 1317, 1318 (N.D.Ill.1983) (order granting HUD temporary possession).[4] The property over which HUD was granted possession included the treasury bills. Defendants have asked us to reconsider the scope of property covered by the September 12, 1983 order. As we have found defendants to be in default, we must now enter an order of foreclosure. Our decision on the reconsideration motion will, therefore, define the extent of the property to be foreclosed.

Our conclusion that HUD was entitled to project receipts was based on the language of the mortgage, which defines the mortgaged property as the described real property "[t]ogether with all and singular the tenements, hereditaments and appurtenances thereunto belonging, and *the rents, issues, and profits* thereof...." Pl.Tr.Ex. B at 2 (emphasis added). Because the property derived from the project, including the treasury bills, fit the description of rents, issues, and profits, we held that it was subject to the mortgage provisions, including the provision for appointment of a receiver upon default. The holding was supported by *United States v. Mountain Village*, 424 F.Supp. 822 (D.Mass.1976), which held that an identical mortgage provision included personalty derived from the real property for purposes of a receiver taking possession.

Defendants argue that they are entitled to project receipts under Illinois law. Illinois law does hold that a mortgagor is entitled to rents collected from the mortgaged property until the mortgagee or receiver takes possession of the property, notwithstanding a mortgage description as

---

**2.** The defendants argue that the use of project funds to purchase treasury bills is permitted under the regulatory agreement between defendants and HUD. Given the unambiguous language of the regulatory agreement, however, such investment of project funds is prohibited. The agreement provides that project funds not used for the project must be deposited in an FDIC insured account. "All rents and other receipts of the project shall be deposited in the name of the project in a bank, whose deposits are insured by the F.D.I.C." Pl.Tr.Ex. E ¶ 9(g).

Although we find that the investment in treasury bills did violate the regulatory agreement, that finding is not essential to the result here.

**3.** The 1980 treasury bills were redeemed at cost in 1981. Pl.Tr.Ex. K at 9.

**4.** Because the order subjected HUD to strict reporting requirements, we granted HUD possession as an equivalent to the more common provisional remedy of appointing a receiver.

broad as that in the instant case. *See, e.g., Metropolitan Life Insurance Co. v. W.T. Grant Co.,* 321 Ill.App. 487, 53 N.E.2d 255 (1944). Illinois law, however, does not apply, for it is well settled that federal, not state, law governs the remedies under FHA insured or HUD mortgages. *United States v. Victory Highways Village, Inc.,* 662 F.2d 488, 497 (8th Cir.1981) (federal law governs redemption under HUD mortgage); *United States v. Scholnick,* 606 F.2d 160, 164 (6th Cir.1979) (federal law governs second mortgagee's rights when HUD mortgage is first mortgage); *United States v. Chester Park Apartments, Inc.,* 332 F.2d 1, 4 (8th Cir.), *cert. denied,* 379 U.S. 901, 85 S.Ct. 191, 13 L.Ed.2d 176 (1964) (federal law governs when receiver may be appointed under HUD mortgage); *United States v. Sylacauga Properties, Inc.,* 323 F.2d 487, 491 (5th Cir.1963) (federal law governs receivership and foreclosure terms under HUD mortgage). Application of federal law on remedies available after default protects the federal treasury and the future of the Fair Housing Act programs:

> After a default the sole situation presented is one of remedies. Commercial convenience in utilizing local forms and recording devices familiar to the community is no longer a significant factor. Now the federal policy to protect the treasury and to promote the security of federal investment which in turn promotes the prime purpose of the Act—to facilitate the building of homes by the use of federal credit—becomes predominant. Local rules limiting the effectiveness of the remedies available to the United States for breach of a federal duty can not be adopted.

*United States v. View Crest Garden Apartments, Inc.,* 268 F.2d 380, 383 (9th Cir.), *cert. denied,* 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959) (holding federal law governs appointment of receiver for HUD mortgage). Only when required by contract or statute or when consistent with federal policy and when federal law is si-

lent on an issue is state law to be applied. "Every federal appellate case dealing with the government's foreclosure remedies under [Fair Housing Act] insured mortgages applied federal law to assure the program against loss, state law to the contrary notwithstanding." *United States v. Stadium Apartments, Inc.,* 425 F.2d 358, 362 (9th Cir.), *cert. denied,* 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970) (applying state redemption law only because not in conflict with federal policy). No factor is present here to suggest that we should resort to state law. Neither the mortgage nor the Fair Housing Act require us to apply Illinois law. Illinois law, which requires a mortgagee to take possession of the premises before being entitled to rents, directly conflicts with the policy of protecting federal investments under the Fair Housing Act. But more importantly, there is no need to apply Illinois law, for federal law answers the question with which we are presented.

■ Two federal grounds support awarding the treasury bills to the United States. First under federal law as well as the mortgage and regulatory agreement, the United States is entitled to project income earned after default. Secondly, the United States is entitled to the return of project funds spent after default for purposes other than operating expenses.

■ The mortgaged property, as defined by the mortgage, includes rents, profits, and issues. Under the mortgage, "all rents, profits, and income from the property covered by this mortgage are hereby assigned to the mortgagee." Pl. Tr.Ex. B ¶ 4. The regulatory agreement contains a comparable provision. Pl.Tr.Ex. E ¶ 11. Both the mortgage and the regulatory agreement, however, permit the mortgagor to collect and retain the rents so long as it is not in default. Pl.Tr.Ex. B ¶ 4, Ex. E ¶ 11. Upon default, the mortgagor's entitlement to further rents ceases and the United States' right to such receipts is perfected.[5] Under federal law, the mortgagee

**5.** The mortgage provides that upon default, the    mortgagee shall be entitled to appointment of a

is entitled to all income from the project upon the default of the mortgagor. *United States v. Pine Hill Apartments,* 261 F.2d 667 (5th Cir.1958). When the mortgagor defaults, the United States is entitled to apply all further rents to the mortgagor's indebtedness whether or not the mortgagee or a receiver takes possession. *United States v. Dunn Garden Apartments, Inc.,* 335 F.Supp. 439 (N.D.N.Y. 1971). *See also Clark Investment Co. v. United States,* 364 F.2d 7 (9th Cir.1966) (net rents to be applied to debt under Fair Housing mortgage). Admittedly, the United States is not entitled to project receipts collected before default. Upon the default, however, the United States, under the mortgage, the regulatory agreement, and federal law, became entitled to rents collected thereafter.

■ The defendants defaulted on the loan in December, 1980. Any income derived from the project thereafter belongs to the United States. The treasury bills now in the project's name were acquired after default. In 1981 and 1982 defendants collected $188,276 and $200,303 respectively in rental income. Pl.Tr.Ex. K at 9, Tr.Ex. L at 9. Defendants purchased the treasury bills in question during the same years. Defendants were required by the regulatory agreement to deposit project receipts in FDIC insured accounts. Had this been done it would be easy to determine when the funds in question were earned since we could conclude that deposits made after December, 1980 were derived from project income earned after December, 1980. Defendants chose instead to violate the regulatory agreement. Defendants cannot avoid the determination that the bills were purchased with income received after default by violating the regulatory agreement. We find that the treasury bills were purchased with income received after default and conclude that the United States is entitled to the treasury bills.

■ Even if our finding that the funds used to purchase the treasury bills came into the project after default is faulty, the United States is still entitled to the bills on a second ground. In *Thompson v. United States,* 408 F.2d 1075 (8th Cir.1969), the mortgagor of an FHA insured mortgage withdrew money from the project account after default. Because the withdrawn funds were not used for operating expenses, the withdrawals were unauthorized. *Id.* at 1080. The court held the government entitled to the funds. The situation here is comparable to that in *Thompson:* after defaulting on the loan the defendant spent large sums of money on treasury bills, an expenditure which cannot be described as an operating expense. As in *Thompson,* the United States is entitled to those funds.

Defendants' argument that because they advanced funds to the project in early years, they are entitled to the bills purchased after the default is without merit. As the trial court in *Thompson* said,

> While the partnership was not required to advance funds to the project, it is clear that in the absence of such advances, the project would never have been able to get off the ground. The advances were made by the partnership not to protect the insurance company or the Government or to enhance the security but to promote the interests and expectations of the partners. The Government never guaranteed the partnership that the Summit House operation would be successful or profitable, and the Government never assumed the risk of loss should the project fail, except that the Government was willing to insure a loan which had for its security only the property itself, there being no personal recourse against the borrower.

*Thompson v. United States,* 272 F.Supp. 774, 787 (E.D.Ark.1967), *aff'd,* 408 F.2d 1075 (8th Cir.1969).

---

receiver to collect the rents. The mortgage does not, however, condition the right to those rents

on appointment of a receiver.

**1324**

The United States is entitled not only to foreclosure of the real property, but also the treasury bills purchased after default with income from the real property. Defendants' motion for reconsideration is denied. Foreclosure is ordered pursuant to the order entered this day.