UNITED STATES of America, Plaintiff,

v.

FLORAL PARK DEVELOPMENT COMPANY, et al., Defendants.

No. C–2–78–884.

United States District Court, S.D. Ohio, E.D.

June 19, 1985.

Albert E. Ritcher, Asst. U.S. Atty., Columbus, Ohio, John H. Mahoney, Associate Regional Counsel, HUD, Chicago, Ill., for plaintiff.

Thomas E. Cavendish and Robert W. Trafford, Columbus, Ohio, for defendants.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter is currently before the Court on cross motions for summary judgment to determine the entitlement to certain funds.

The funds at issue were collected by the defendant, Huntington National Bank ("HNB"), as rental payments derived from an apartment complex known as the Weston Apartments. HNB collected the subject funds while it was in lawful possession of the apartment complex. Plaintiff, the United States of America, claims that the funds collected by HNB rightfully belong to it. The case has been submitted to the Court by the parties on a joint stipulation of facts.

### STATEMENT OF THE CASE

On February 24, 1971, Floral Park Development Company ("FPDC") executed and delivered to Citizens Mortgage Corporation a mortgage note in the amount of $3,101,-500. This mortgage note was secured by a mortgage deed which covered the Weston Apartments. On the same date, FPDC entered into a Regulatory Agreement with the Secretary of the United States Department of Housing & Urban Development ("HUD"). This Agreement established certain duties in FPDC in exchange for HUD's agreement to insure the mortgage note held by Citizens Mortgage Corporation pursuant to § 221(d)(4) of the National Housing Act, 12 U.S.C. § 1715*l*.

On November 17, 1972, FPDC conveyed its interest in the Weston Apartments to William A. Brandwein and Robert E. Horowitz. Messrs. Brandwein and Horowitz held the property as trustees pursuant to a trust agreement. The beneficiary under the trust agreement was Weston Phase I. The conveyance was effected without the prior approval of HUD. The conveyance was, therefore, in violation of paragraph 6 of the Regulatory Agreement to which FPDC and HUD were signatories. Also, on or about November 21, 1972, the mortgage note and deed were assigned by marginal assignment from Citizens Mortgage Corporation to the State Teachers Retirement Board of Ohio.

In 1975, beginning with the January 1, 1975 installment, payments on the mortgage note ceased. On February 27, 1975,

Weston Phase I, the beneficial owner of the Weston Apartments, filed a petition under Chapter XI of the Bankruptcy Act. On May 2, 1975, the bankruptcy court entered an Order declaring Weston Phase I a bankrupt.

On April 21, 1975 and June 18, 1975, the State Teachers Retirement Board of Ohio executed certain agreements effecting the assignment of the mortgage note and deed relating to the Weston Apartments to HUD. These assignments were duly recorded. No actual notice of the assignments was provided to either Weston Phase I or the Weston Trustee. On or about July 24, 1975, HUD paid the State Teachers Retirement Board of Ohio $2,866,-701.54 on the latter's mortgage insurance claim arising out of the default on the mortgage note. HUD, as noted above, insured the mortgage note originally executed between Citizens Mortgage Corporation and FPDC. A final payment of $238,-960.14 was made by HUD to the State Teachers Retirement Board of Ohio on or about July 26, 1977. Neither Weston Phase I nor Fred G. Preston, the trustee in bankruptcy for Weston Phase I, had knowledge of the payments made by HUD to the State Teachers Retirement Board.

On August 26, 1975, Messrs. Brandwein and Horowitz, as legal owners, conveyed the Weston Apartments by fiduciary deed to Fred G. Preston, as the trustee in bankruptcy for Weston Phase I. This conveyance was also effected without the prior approval of HUD as required under paragraph 6 of the Regulatory Agreement. On August 15, 1978, Mr. Preston conveyed legal title to the Weston Apartments to defendant HNB. This conveyance was made pursuant to an agreement, to which the bankruptcy court consented, which was entitled "Joint Application of Trustees to Compromise Claims." The agreement constituted a settlement of the claims HNB, as a creditor, had against Weston Phase I. HNB held a mortgage on the Weston Apartments in the amount of $590,707.69.[1]

---

1. The mortgage note held by HNB was inferior to the mortgage note held by HUD.

The agreement also provided that the trustee, Mr. Preston, would collect the rents from the Weston Apartments which accrued prior to July 1, 1978. Thereafter, HNB would be entitled to all rents which accrued. During the time it was in possession, HNB collected $246,500.76 in rental payments. It is with respect to this money that plaintiff makes its claim of entitlement.

HUD was never served formal notice by the bankruptcy court of the arrangement proceedings concerning Weston Phase I or its subsequent adjudication in bankruptcy. Also, HUD was not served formal notice with respect to the hearing on the Joint Application of Trustees to Compromise Claims. However, HUD, the State Teachers Retirement Board of Ohio and Citizens Mortgage Corporation did have actual knowledge of the bankruptcy of Weston Phase I and the appointment of Fred G. Preston as the trustee in bankruptcy at least by the first meeting of the creditors on May 22, 1975. HUD and Citizens Mortgage Corporation also had actual notice of the August 3, 1978 hearing on the Joint Application of Trustees to Compromise Claims.[2] Finally, HUD had actual knowledge that the trustee, Mr. Preston, had employed a management company to manage the Weston Apartments. HUD never made a demand or request that either the trustee or the management company deliver any rents collected by them to HUD.

Citizens Mortgage Corporation, the State Teachers Retirement Board of Ohio and HUD did not file any proof of claim or other pleading or document in the case of *In re Weston Phase I*, No. 75–571 (S.D. Ohio July 1, 1983). HUD did, however, respond to a subsequent complaint filed by the trustee, Mr. Preston, to determine the identity of claimants to funds in his possession acquired during the period May 2,

1975 to June 30, 1978 while he was in possession of the Weston Apartments. In response to the complaint, HUD filed an answer setting forth its claim to the funds collected by the trustee. In deciding that HUD was not entitled to the collected funds, the bankruptcy court held:

> In conclusion, HUD is not entitled to the rents under Ohio law by virtue of its failure to take affirmative action after the default on the mortgage. Further, HUD is not entitled to rents under the assignment provisions of the mortgage and regulatory agreement due to its failure to follow the provisions thereof.

The assignment provisions to which the bankruptcy court refers are located at paragraph 4 of the mortgage deed and at paragraph 12 of the Regulatory Agreement.

On August 24, 1978, HUD instituted the instant foreclosure proceedings. On May 2, 1979, a judgment was rendered in favor of HUD against FPDC in the sum of $4,184,351.83, plus interest through the date of sale and any authorized expenses incurred by HUD and chargeable to FPDC. HUD purchased the property at the subsequent foreclosure sale on June 20, 1979 for $4,183,687.67. On August 6, 1979, this Court entered an Order of Confirmation of Sale. On March 3, 1980, the Court entered a deficiency judgment against FPDC in the sum of $315,222.40.

## DISCUSSION

The issue presented by this case is which party, plaintiff or the defendant HNB, is entitled to the funds collected by HNB as rental payments during the time it held legal title to, and was in possession of, the Weston Apartments. HNB argues that it, and not plaintiff, is entitled to the funds because plaintiff failed to take any affirmative action after the default on the mort-

**2.** In fact, Citizens Mortgage Corp. did receive formal notice from the bankruptcy court of the filing of Weston Phase I's petition in bankruptcy and the date, time and place of the first meeting of creditors under Chapter XI, the first meeting of creditors following the adjudication in ban-

kruptcy of Weston Phase I, and the hearing on the Joint Application of Trustees to Compromise Claims. Citizens Mortgage Corp. was the servicing agent for both the State Teachers Retirement Board and HUD.

gage note to ensure that the rents collected from the Weston Apartments accrued to its benefit. The type of affirmative action HNB would have required plaintiff to take would be to move, sometime prior to the date HNB took possession of the property, to take possession itself or for the appointment of a receiver. Plaintiff argues, however, that, under the applicable law, it was not required to take any affirmative action to establish its entitlement to the funds collected after the default on the note. Plaintiff claims that by operation of certain assignment provisions contained within the mortgage deed and the Regulatory Agreement, its entitlement to the rents, profits and income was established on the date of Weston Phase I's default.[3]

The assignment provisions to which plaintiff refers, as noted earlier, are located at paragraph 4 of the mortgage deed and paragraph 12 of the Regulatory Agreement. Paragraph 4 of the mortgage deed provides:

> That all rents, profits and income from the property covered by this mortgage are hereby assigned to the Mortgagee for the purpose of discharging the debt hereby secured. Permission is hereby given to the Mortgagor so long as no default exists hereunder, to collect such rents, profits and income for use in accordance with the provisions of the Regulatory Agreement.

Paragraph 12 of the Regulatory Agreement provides for the same arrangement as paragraph 4 of the mortgage deed. As is apparent from the facts of this case, Weston Phase I, the beneficial owners of the Weston Apartments, the mortgaged property, did default. Plaintiff argues that, by the simple operation of the assignment provisions, it, and not HNB, is entitled to the rents collected notwithstanding the fact that the rents were collected during a period of time in which HNB had

legal title to, and was in possession of, the Weston Apartments.

To determine which party is entitled to the subject funds, the Court need not enter into a detailed analysis of the controlling law on its own. That is because the Court finds the analysis and decisions of the courts in *United States v. American National Bank & Trust Co.*, 573 F.Supp. 1319 (N.D.Ill.1983) and *United States v. Dunn Garden Apartments, Inc.*, 335 F.Supp. 439 (N.D.N.Y.1971) to be persuasive. These cases are predicated upon factual situations which are very similar to the factual situation underlying this case. They also hold in favor of HUD.

In the *American National Bank* case, a mortgage note and deed and regulatory agreement containing the same assignment provisions as those involved herein were executed between the owner of the mortgaged property, Drexel Towers South, and the mortgagee, American National Bank & Trust Co. The mortgage was, of course, insured by HUD. In December, 1980, Drexel Towers South defaulted on the mortgage note. On September 12, 1983, the district court granted HUD immediate possession of the mortgaged property. During the period between the default and HUD's taking possession of the property, certain funds, totaling approximately $100,-000 derived through rents collected from the property during the period, were used to purchase treasury bills. In ruling that HUD, despite its failure to be in possession of the property during the time in which the rents were collected, was entitled to the funds represented by the treasury bills, the court stated:

> The mortgaged property, as defined by the mortgage, includes rents, profits, and issues. Under the mortgage, "all rents, profits, and income from the property covered by this mortgage are hereby as-

---

**3.** The Court is somewhat uncertain as to whether this is the operative date since HUD became the holder of the mortgage after the default occurred. At the time of the default, the State Teachers Retirement Board of Ohio held the mortgage. The operative date may have been the date after the default upon which HUD became the mortgagee. In light of the facts in this case, however, this discrepancy is irrelevant.

signed to the mortgagee." ... The regulatory agreement contains a comparable provision.... Both the mortgage and the regulatory agreement, however, permit the mortgagor to collect and retain the rents so long as it is not in default.... Upon default, the mortgagor's entitlement to further rents ceases and the United States' right to such receipts is perfected. Under federal law, the mortgagee is entitled to all income from the project upon the default of the mortgagor. *United States v. Pine Hill Apartments*, 261 F.2d 667 (5th Cir.1958). When the mortgagor defaults, the United States is entitled to apply all further rents to the mortgagor's indebtedness whether or not the mortgagee or a receiver takes possession. *United States v. Dunn Garden Apartments, Inc.*, 335 F.Supp. 439 (N.D.N.Y.1971). *See also Clark Investment Co. v. United States*, 364 F.2d 7 (9th Cir.1966) (net rents to be applied to debt under Fair Housing mortgage). Admittedly, the United States is not entitled to project receipts collected before default. Upon the default, however, the United States, under the mortgage, the regulatory agreement, and federal law, became entitled to rents collected thereafter.

*United States v. American National Bank & Trust Co., supra*, at 1322–23.

In the *Dunn Garden Apartments* case, the default on the HUD insured mortgage occurred in June, 1959. The mortgage was assigned to HUD, as insurer, in April, 1960. The mortgage contained an assignment of rent clause. HUD filed its complaint on September 20, 1960. The funds at issue were paid by the mortgagor to a third party after the default but before the complaint was filed. The district court, in holding that HUD was entitled to the subject funds, stated:

> The formidable array of case law above demonstrates to my mind that in this federal mortgage foreclosure proceeding the state law which the defendants seek to invoke in regard to the rents is not applicable here. Under the mortgage clause in this instance, from its plain language, the mortgage holder acquired a lien upon the rents upon the occurrence of the default without requirement of other affirmative action....

*United States v. Dunn Garden Apartments, Inc.*, 335 F.Supp. 439 (N.D.N.Y. 1971).

The two cases upon which this Court relies establish that federal law is to be applied to resolve the issue involved herein. *See also United States v. Scholnick*, 606 F.2d 160 (6th Cir.1979). In fashioning the federal law, these courts found that, at the moment the mortgagor defaults, the assignment of rent provisions operate to cause the funds to be derived from the property thereafter to be HUD's, as the mortgagee. This rule is to apply notwithstanding the fact that HUD pursues no affirmative action to seek possession of the property or the appointment of a receiver during the time the subject funds are being collected. Further, the rule is to apply notwithstanding the fact that HUD is not the mortgagee at the time of default. *See United States v. Dunn Garden Apartments, Inc., supra.*[4]

The Court is aware that a contrary decision was reached in the preceding bankruptcy action. *In re Weston Phase I*, No. 75–571 (S.D.Ohio July 1, 1983). This Court, however, does not believe that the bankruptcy court gave the proper effect to the assignment of rent provisions located in the mortgage deed and the Regulatory Agree-

---

**4.** The Court notes that this rule is made more plausible by the arrangement by which HUD insures the mortgage. Generally, the default will occur when the mortgagee is the private lender. Several months often will lapse before the assignment of the mortgage to HUD is effected. HUD should not be penalized for the failure of the private lender to seek the activation of the assignment of rents provisions. Therefore, it is most reasonable for those provisions to be activated by the default, as they provide, and not by the doing of some subsequent affirmative act by HUD.

ment. Further, the Court does not believe that the bankruptcy court acted consistently with the purpose underlying the need to apply federal law in this case:

> [I]n any consideration of remedies available upon default of a federally held or insured loan, federal interest predominates over state interest.... This rule obtains because of an overriding federal interest in protecting the funds of the United States and in securing federal investments, thereby promoting the purposes of the National Housing Act.... Local rules that limit the effectiveness of remedies available to the United States are not to be adopted....

*United States v. Scholnick, supra,* at 164.

### CONCLUSION

The Court has determined from its analysis above, that plaintiff, the United States of America, is entitled to the funds collected by HNB during the time it held legal title to, and was in possession of, the Weston Apartments. Plaintiff's motion, seeking this determination, was titled "Plaintiff's Motion for Accounting and Judgment Against Defendant Huntington National Bank." An accounting has already been conducted and has resulted in a determination that HNB collected $246,500.76 during the relevant period. The Court will treat plaintiff's motion, therefore, as one merely for summary judgment.

**WHEREUPON,** upon consideration and being duly advised, the Court determines plaintiff's motion for summary judgment to be meritorious and it is, therefore, **GRANTED. FURTHER,** the Court determines the defendant HNB's cross-motion for summary judgment to be without merit and it is, therefore, **DENIED. FURTHER,** the Court determines that judgment should be entered in favor of plaintiff and against the defendant HNB in the amount of $246,-500.76. The Clerk of Courts is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**