*684
 
 ROSS, Circuit Judge.
 

 In this action, which originated in the Bankruptcy Court for the Eastern District of ARkansas, appellant, the United States Department of Housing and Urban Development (HUD) claims a right to rental payments collected by the debtor, Landmark Park & Associates (Landmark) during Landmark’s post-petition operation of a mobile home park. In 1973, the parties executed a Regulatory Agreement and Deed of Trust in connection with a $536,000 loan by HUD which Landmark used to purchase the University Hills Mobile Home Park in Starksville, Mississippi. Both loan documents contained a clause assigning all rents, profits and income from the park to HUD as part of the security for the loan.
 

 In early 1983, HUD notified Landmark of its default and moved to foreclose and sell the property. Shortly thereafter, on March 15,1983, Landmark filed a bankruptcy petition seeking reorganization under Chapter 11 of the Bankruptcy Code. During the bankruptcy proceedings, the debtor continued to operate the park and collect rentals. Landmark also paid the ordinary expenses of operation and maintenance of the park but failed to pay taxes or mortgage payments to HUD.
 

 The bankruptcy and district courts denied HUD’s claim to post-petition rentals generated by the park on the ground that HUD had failed to perfect its interest in rents and profits under applicable nonbank-ruptcy law. If unperfected, HUD’s security interest in rents and profits is subordinate to that of the debtor-in-possession on behalf of the unsecured creditors of the estate by virtue of 11 U.S.C. § 544(a), the “strong-arm clause.”
 

 11 U.S.C. § 552(b) indicates that a secured party’s right to rents, profits and other products or proceeds acquired by the estate after the commencement of bankruptcy depends upon the provisions of the security agreement and “applicable non-bankruptcy law” (except the court has discretion to deviate from such provisions based on the equities of the case). The central issue of this appeal is whether state or federal law is the “applicable nonbank-ruptcy law” governing perfection of the security interest in rents and profits created by the Regulatory Agreement and Deed of Trust in favor of HUD, a nationwide federal mortgage lender.
 

 We conclude that federal rather than state law controls the manner in which HUD could perfect its interest in the rental income and that HUD’s interest was perfected as of the date of the debtor’s default, at least no later than March 15,1983. Accordingly, we reverse.
 
 [1]
 

 Concerning whether state or federal law applies to this controversy, Landmark relies on
 
 Butner v. United States,
 
 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Construing the Bankruptcy Act of 1898, the Supreme Court in
 
 Butner
 
 held that “[ujnless some federal interest requires a different result,”
 
 id.
 
 at 55, 99 S.Ct. at 918, state law determines whether a mortgagee has an enforceable interest in rents collected between the commencement of bankruptcy and the foreclosure sale of the mortgaged property. The Fifth Circuit in
 
 Wol
 
 
 *685
 

 ters Village, Ltd. v. Village Properties, Ltd. (In re Village Properties, Ltd.),
 
 723 F.2d 441, 443 (5th Cir.),
 
 cert. denied,
 
 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984) concluded that
 
 Butner
 
 “is still good law under the Bankruptcy Code of 1978.” The district court interpreted Arkansas law to require a mortgagee to take actual possession of the mortgaged property in order to perfect a security interest in rents. The bankruptcy court considered that HUD should have sought appointment of a receiver, apparently in a state court, in order to perfect the assignment of rents. However, HUD considered itself precluded by the automatic stay, 11 U.S.C. § 362, from taking either course of action.
 

 On the other hand, neither
 
 Butner
 
 nor
 
 Village Properties
 
 dealt with a federal lender. In
 
 United States v. Kimbell Foods, Inc.,
 
 440 U.S. 715, 726-27, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979), decided within weeks after
 
 Butner,
 
 the Supreme Court directed that federal law must govern the rights of the United States in the context of federal nationwide lending programs. Under the doctrine of
 
 Clearfield Trust Co. v. United States,
 
 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943),
 
 [2]
 
 when federal agencies lend funds by the authority of federal legislation, their rights as lenders also derive from and warrant the protection of federal law.
 
 Kimbell, supra,
 
 440 U.S. at 726-27, 99 S.Ct. at 1457.
 
 [3]
 

 The presumption expressed in
 
 Kimbell
 
 in favor of federal law when a federal creditor’s rights are at stake is consistent with the views expressed by our circuit and others in related contexts.
 
 See, e.g., United States v. Victory Highway Village, Inc.,
 
 662 F.2d 488, 497 (8th Cir.1981) (federal law governs “the rights and liabilities of the parties [regarding] remedies available
 
 *686
 
 upon default of a federally held or insured loan,” and a state statutory right of redemption “limiting the effectiveness of the remedies available to the United States” cannot be adopted);
 
 United States v. Scholnick,
 
 606 F.2d 160, 164, 166-67 (6th Cir.1979) (federal law controls the rights of junior lienors when HUD as first mortgagee agrees to a consent decree of foreclosure);
 
 Clark Investment Co. v. United States,
 
 364 F.2d 7, 9-10 (9th Cir.1966) (federal law governs the application of net rents collected during the redemption period upon foreclosure of a Federal Housing Administration mortgage loan);
 
 United States v. Chester Park Apartments, Inc.,
 
 332 F.2d 1, 3-5 (8th Cir.),
 
 cert. denied,
 
 379 U.S. 901, 85 S.Ct. 191, 13 L.Ed.2d 176 (1964) (federal law controls appointment of a receiver to collect rents pending foreclosure of a HUD mortgage).
 

 As we have previously recognized, the application of federal law to the rights and remedies of the United States upon default of federally held or insured loans is warranted by the “ ‘overriding federal interest in protecting the funds of the United States and in securing federal investments’ ”.
 
 United States v. Victory Highway Village, Inc., supra,
 
 662 F.2d at 497 (citation omitted). Protection of the federal treasury and the purposes and integrity of nationwide federal lending programs is thus a “federal interest” of the kind referred to in
 
 Butner
 
 which requires a different result from the general rule of resort to state law.
 

 As for the content of the applicable federal law, we understand
 
 Kimbell
 
 to indicate that “state law [can] be adopted as the federal rule of decision so long as a national rule [is] not needed to protect the federal interests underlying the [federal lending] program.”
 
 United States v. Missouri Farmers Association, Inc.,
 
 764 F.2d 488, 489 (8th Cir.1985),
 
 cert. denied,
 
 — U.S. -, 106 S.Ct. 1281, 89 L.Ed.2d 588 (1986) (concluding that federal interests would be prejudiced by adoption of state law regarding acts effecting release of a Farmers Home Administration crop lien).
 
 See also United States v. Farmers Cooperative Co.,
 
 708 F.2d 352, 353 n. 2 (8th Cir.1983) (rejecting application of state law concerning waiver of a Farmers Home Administration security interest in crops and farm products).
 

 We have incorporated state law as the federal rule of decision when the state law is derived from a uniform statute such as the Uniform Commercial Code and to do so would therefore not hinder the “federal interest in uniformity of the law.”
 
 United States v. Kukowski,
 
 735 F.2d 1057, 1058 (8th Cir.1984). There is, however, no such uniformity in state law concerning perfection of a mortgagee's entitlement to rents.
 
 See, e.g., Exchange National Bank v. Gotta (In re Gotta),
 
 47 B.R. 198, 202 n.4 (Bankr.W.D.Wis.1985);
 
 Eastern Savings Bank v. Epco Newport News Associates (In re Epco Newport News Associates),
 
 14 B.R. 990, 995 (Bankr.S.D.N.Y.1981);
 
 August v. Michigan Avenue National Bank (In re Michigan Avenue National Bank),
 
 2 B.R. 171, 184-85 (Bankr.N.D.Ill.1980).
 

 Moreover, there exists considerable difference of opinion concerning permissible methods by which an interest in rents may be perfected while the automatic stay of 11 U.S.C. § 362 is in effect.
 
 See, e.g., Consolidated Capital Income Trust v. Colter, Inc.,
 
 47 B.R. 1008, 1011 (D.Colo.1985) (the beneficiary of a deed of trust with an assignment of rents is perfected as to rents accruing after filing a notice of perfection under 11 U.S.C. § 546(b));
 
 Exchange National Bank v. Gotta (In re Gotta), supra,
 
 47 B.R. at 202 (a section 546(b) notice is not effective to perfect an assignment of rents);
 
 In re Engstrom,
 
 33 B.R. 369, 373-74 (Bankr.D.S.D.1983) (until a creditor obtains relief from the automatic stay and actual possession of the realty or the trustee abandons the property, the creditor cannot perfect its security interest in rents);
 
 Santa Fe Federal Savings & Loan Association v. Oak Glen R-Vee (In re Oak Glen R-Vee),
 
 8 B.R. 213, 216 (Bankr.C.D.Cal.1981) (complaint by a creditor equivalent to motion for sequestration of rents is an acceptable substitute method for perfection
 
 *687
 
 of a rent assignment in lieu of actual possession or appointment of receiver).
 

 In the circumstances of this case, HUD was unable to obtain a hearing in the bankruptcy court for eight months after moving for relief from the automatic stay. In light of the idiosyncrasies of state law and bankruptcy practice, we conclude that a uniform federal rule is necessary to clarify the means by which a federal lender may enforce an assignment of rents.
 

 Two district courts have held that no affirmative acts of any kind are necessary to enforce HUD’s right under its Regulatory Agreement and Deed of Trust to rental income derived from the mortgaged property between the debtor’s default and HUD’s possession or foreclosure of the property.
 
 See United States v. Floral Park Development Co.,
 
 619 F.Supp. 144 (S.D.Ohio 1985);
 
 United States v. American National Bank & Trust Co.,
 
 573 F.Supp. 1319 (N.D.Ill.1983). These decisions reason that the assignment provisions of the Regulatory Agreement and Deed of Trust, identical to those before this court, create an entitlement to rents in favor of HUD which is immediately activated and perfected upon the debtor’s default.
 

 The loan documents dedicate rental income to debt service payments and reasonable operating and maintenance expenses. The documents permit the debtor to collect and retain rents so long as it is not in default. “Upon default, the mortgagor’s entitlement to further rents ceases and the United States’ right to such receipts is perfected.”
 
 American National Bank & Trust Co., supra,
 
 573 F.Supp. at 1322. While the deed of trust entitles HUD to the appointment of a receiver to collect rents, HUD’s right to rents is not conditioned upon the use of that remedy.
 
 Id.
 
 at 1322 n. 5. Under federal law as embodied in the loan documents, HUD is entitled to rental income earned after default and to the return of any rental income spent after default for unauthorized purposes, i.e., any purposes other than debt service and operating and maintenance costs.
 
 Id.
 
 at 1322-23.
 
 Accord Floral Park, supra,
 
 619 F.Supp. at 148: “[A]t the moment the mortgagor defaults, the assignment of rent provisions operate to cause the funds to be derived from the property thereafter to be HUD’s, as the mortgagee. This rule is to apply notwithstanding the fact that HUD pursues no affirmative action to seek possession of the property or the appointment of a receiver during the time the subject funds are being collected.” Both decisions rejected the application of state law requiring further affirmative acts by a mortgagee to perfect its interest in rents.
 

 We differ from the reasoning of
 
 Floral Park
 
 and
 
 American National Bank & Trust
 
 to the extent that we consider the affirmative act of recording the loan documents essential to perfect the security interest in rents created by the rent assignment provisions. We consider recording necessary in order to meet the concern for the predictability and stability of financial transactions expressed in
 
 United States v. Kimbell Foods, Inc., supra.
 

 We consider the stability of commercial transactions sufficiently protected by the requirement that HUD record the documents on which it relies for the creation of its security interest in rents and profits. Our conclusion that HUD, as a federal creditor, could perfect its interest in rents by recording the loan documents containing the assignment of rents results in affording other creditors notice of HUD’s interest while protecting HUD from the vagaries of state law concerning acts necessary to activate a mortgagee’s entitlement to rents. Since HUD did record the documents prior to the debtor’s default and the initiation of bankruptcy proceedings, and since we do not consider the state law requirement of possession of the property or appointment of a receiver applicable to HUD, the result in the circumstances of this case is that HUD’s security interest in the rents and profits was perfected pre-pe-tition.
 

 The issues discussed in this opinion were presented in the context of an appeal from a denial of HUD’s motion for payment of
 
 *688
 
 monies based on 11 U.S.C. § 363(e). We reverse and remand this action to the district court with directions to refer the case to the bankruptcy court for proceedings consistent with this opinion.
 
 [4]
 

 [1]
 

 . During the bankruptcy proceedings, HUD took a number of procedural steps in an effort to assert its right to the rental income. On December 2, 1983, HUD moved for relief from the automatic stay alleging that its interests were not adequately protected and that income from the park was being improperly distributed as no mortgage payments had been made. After a series of continuances and recusals by bankruptcy judges, the motion was heard on July 20, 1984, and denied on September 5, 1984. HUD failed to take a timely appeal of this order to the district court.
 

 In the meantime, HUD also filed a proof of claim attaching the note and loan documents. Moreover, on July 31, 1984, HUD filed a "motion for payment of monies for the use of property” premised on 11 U.S.C. § 363(e), seeking to prohibit the debtor’s use of cash collateral (the rental income) absent adequate protection of HUD’s interest in the realty and rents. HUD’s appeal from the bankruptcy court’s order of September 10, 1984, denying HUD’s motion for payment of monies was timely. Because, as we have determined herein, HUD’s interest in the rental income was perfected, the bankruptcy and district courts erred in authorizing the debt- or’s use of cash collateral without assuring adequate protection of HUD’s interest.
 

 [2]
 

 .
 
 Clearfield Trust Co. v. United States,
 
 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943) established that the rights and duties of the United States on its commercial paper are governed by federal common law.
 
 See generally
 
 C. WRIGHT, LAW OF FEDERAL COURTS § 60 (1983) and Note, The Federal Common Law, 82 HARV.L.REV. 1512, 1526-31 (1969) (discussing the extension of
 
 Clearfield Trust
 
 to other commercial contexts in which the United States is a party).
 

 [3]
 

 . At issue in
 
 Kimbell
 
 were questions of priority as between federal security interests stemming from federal loan programs and private liens arising under local law. In determining that federal law controlled these controversies, the Supreme Court stated:
 

 This Court has consistently held that federal law governs questions involving the rights of the United States arising under nationwide federal programs. As the Court explained in
 
 Clearfield Trust Co. v. United States, supra,
 
 at 366-367, [63 S.Ct. at 575]:
 

 "When the United States disburses its funds or pays its debts, it is exercising a constitutional function or power.... The authority [to do so] had its origin in the Constitution and the statutes of the United States and was in no way dependent on the laws [of any State], The duties imposed upon the United States and the rights acquired by it ... find their roots in the same federal sources. In absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards." (Citations and footnote omitted.)
 

 Guided by these principles, we think it clear that the priority of liens stemming from federal lending programs must be determined with reference to federal law. The SBA and FHA unquestionably perform federal functions within the meaning of
 
 Clearfield.
 
 Since the agencies derive their authority to effectuate loan transactions from specific Acts of Congress passed in the exercise of a "constitutional function or power,”
 
 Clearfield Trust Co. v. United States, supra
 
 [318 U.S.] at 366 [63 S.Ct. at 575], their rights, as well, should derive from a federal source. When Government activities “aris[e] from and bea[r] heavily upon a federal ... program," the Constitution and Acts of Congress “ ‘require’ otherwise than that state law govern of its own force.”
 
 United States v. Little Lake Misere Land Co.,
 
 412 U.S. 580, 592, 593 [93 S.Ct. 2389, 2396, 2397, 37 L.Ed.2d 187]. In such contexts, federal interests are sufficiently implicated to warrant the protection of federal law.
 

 United States
 
 v.
 
 Kimbell Foods, Inc.,
 
 440 U.S. 715, 726-27, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). In determining the content of the federal law to be applied to the government’s priority rights discussed in
 
 Kimbell,
 
 the Court emphasized its reluctance to "undercut the reliability of the notice filing system, which plays a crucial role in commercial dealings."
 
 Id.
 
 at 739 n. 42, 99 S.Ct. at 1464 n. 42. Accordingly, the Court rejected the government’s proposed adoption of protectionist federal tax lien concepts as a uniform federal priority rule and instead selected state law to be incorporated as the federal rule of decision for the priority disputes at issue in
 
 Kimbell. Id.
 
 at 728-40, 99 S.Ct. at 1458-64.
 

 [4]
 

 . By an order of December 18, 1984, the bankruptcy court lifted the automatic stay, 11 U.S.C. § 362, and HUD foreclosed and sold the property. The bankruptcy court should consider whether HUD is entitled to an accounting and turnover of rents collected by the debtor between March 15, 1983, and the foreclosure sale pursuant to 11 U.S.C. § 363(c)(4).