UNITED STATES of America, et al.

v.

**BORDEN FINANCIAL CORPORATION, a Louisiana Partnership.**

Civ. A. No. 93–580.

United States District Court, E.D. Louisiana.

Feb. 4, 1994.

---

Eneid A. Francis, Asst. U.S. Atty. Chief, Financial Litigation Unit, New Orleans, LA, for the U.S.

Regina S. Wedig and Donald E. Theriot, Bordelon, Hamlin & Theriot, New Orleans, LA, for Borden Financial Corp. and Das A. Borden, a Louisiana Partnership, in commendam.

McNAMARA, District Judge.

Before the court is the Appeal of the United States of America, Department of Housing and Urban Development ("HUD"), from a final Order of the United States Bankruptcy Court denying Appellee's Motion for Use of Cash Collateral. Borden Financial Corporation and Das A. Borden, a Louisiana Partnership *in commendam,* have filed a brief as

appellee. This matter is before the court on briefs, without oral argument.

## FACTS

HUD possesses a valid mortgage and regulatory agreement under Section 221(d)(4) of the National Housing Act, 12 U.S.C. § 1715*l* (d)(4) over real property situated in the Third Municipal District of the City of New Orleans, Section 22 of the LaKratt Tract designated as Parcel 6C on a plan by Fromherz Engineers dated June 8, 1971. HUD's mortgage and regulatory agreement were filed in the mortgage records of Orleans Parish, Louisiana, on November 24, 1971. There was no separate written instrument of assignment or pledge of rents filed in the conveyance records of Orleans Parish.

The regulatory agreement is incorporated in Section 3 of the mortgage and details the terms and conditions under which the property had to be operated and also provides for exactly what was liened:

12. As security for the payment due under this Agreement to the reserve fund for replacements, ... the Owners respectively assign, pledge and mortgage to the Commissioner their rights to the rents, profits, income and charges of whatsoever sort which they may receive or be entitled to receive from the operation of the mortgaged property.... Until a default is declared under this Agreement, however, permission is granted to Owners to collect and retain under the provisions of this Agreement such rents, profit, income, and charges....

The mortgage itself also lists all the rents, profits and income which may arise from the liened property. The mortgage contains, at Section 4, the standard HUD assignment of rents provision:

4. That all rents, profits and income from the property covered by this Mortgage are hereby assigned to the Mortgagee for the purposes of discharging the debt hereby secured....

Leonard Dreyfuss and Marcus Hirsch, a Louisiana Partnership *in commendam*, purchased the Greentree Place Apartment on December 13, 1977, from the original mortgagor, Lawrence Creek Associates. These apartments were purchased subject to an existing mortgage and debt insured under Section 221(d)(4) of the National Housing Act, 12 U.S.C. § 1715*l* (d)(4). Leonard Dreyfuss and Marcus Hirsch subsequently amended its partnership agreement to change its name first, to Borden Financial Corporation, and subsequently, to Borden Financial Corporation and Das A. Borden, a Louisiana Partnership *in commendam*. In September 1987, Borden Financial Corporation and Das A. Borden defaulted on its mortgage loan. On June 1, 1988, HUD was assigned the mortgage and debt.

On October 24, 1991, Borden Financial Corporation and Das A. Borden ("Debtor") filed a petition for relief under Chapter 11, and at this time, was indebted to HUD in excess of $10,000,000. On March 24, 1992, the Debtor filed a Motion for Use of Cash Collateral alleging that the apartment rents may constitute cash collateral. HUD filed an objection to the cash collateral motion on three grounds: (1) HUD had a perfected security interest in the rents, profits and income of the apartments; (2) the rents, profits and income were assigned to HUD upon the debtor's default under the mortgage; and (3) the debtor could not use the rents and profits unless HUD consented or the court authorized the debtor's use of the rents and profits upon a finding that HUD was adequately protected.

The Bankruptcy Court issued an Order and Opinion on October 7, 1992. Therein, the court denied the cash collateral motion holding that the post-petition apartment rents were not cash collateral under 11 U.S.C. § 363 because HUD "did not possess a perfected security interest in post-petition rents." As a result, HUD filed the present Appeal.

## STANDARD OF REVIEW

Factual determinations of the Bankruptcy court are subject to the clearly erroneous standard of review. *See* Bankruptcy Rule 8013. The Bankruptcy Court's conclusions of law, however, are subject to a *de novo* standard of review. *U.S. v. United States Gyp-*

*sum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

## ANALYSIS

Before the court addresses the substantive issues on appeal, it is necessary to first decide Appellee's Motion to Dismiss Notice of Appeal based upon untimeliness. If the court finds that HUD timely filed its Notice of Appeal, the court must then decide the three substantive issues presented herein: (1) whether federal or state law governs the manner in which HUD was required to perfect a post-petition assignment of rents; (2) whether HUD's security interest was perfected by the recording of the mortgage and regulatory agreement with the Recorder of Mortgages for the Parish of Orleans, Louisiana, on November 24, 1971; and (3) whether the debtor is a separate entity from the debtor in possession or a third person for notice purposes.

1. *HUD Timely Filed its Notice of Appeal*

■ On March 24, 1992, Debtor filed a Motion for Use of Cash Collateral, and HUD filed its objection to this motion on June 3, 1992. On October 7, 1992, the Bankruptcy Court issued an Order denying Debtor's Motion and finding that the post-petition rents were not cash collateral under Section 363(c)(2). On October 14, 1992, HUD filed a Motion for Stay of Order Denying Debtor's Motion for Use of Cash Collateral. On October 19, 1992, before the court ruled · on HUD's Motion for Stay, HUD filed a Motion for Extension of Time to File Motion for Reconsideration, which was granted on October 22, 1992. On October 30, 1992, still before the court ruled on the pending Motion for Stay of Order, HUD filed its Motion for Reconsideration. Four days later, an Order was entered into the record denying HUD's Motion for Stay of Order, but neither party ever received notice of this denial. On December 7, 1992, the Bankruptcy Court denied HUD's Motion for Reconsideration, and HUD filed is Notice of Appeal ten days later on December 17, 1992.

■ This court finds that HUD's Motion for Stay of Order, filed on October 14, 1992, was in effect a Motion to Alter or Amend Judgment or a Motion for a New Trial. The court reaches this conclusion because HUD's Motion and Memorandum clearly questioned the correctness of the Bankruptcy Court's Order of October 7, 1992. Regardless of the title of a motion, it is the substance of it which controls. *Lusted v. San Antonio Independent School District*, 741 F.2d 817 (5th Cir.1984). Moreover, neither party ever received notice that the court entered its denial on the Motion for Stay of Order on November 3, 1992. Four days prior to this entry, however, HUD had filed its Motion for Reconsideration. Thus, there was no break in time between the two Rule 59(e) Motions filed by HUD.

Appellee correctly points out that pursuant to Bankruptcy Rule 9023, a Motion to Reconsider must be filed within 10 days after the entry of the judgment and that, pursuant to Bankruptcy Rule 9006(b)(2), the Bankruptcy Court is not authorized to enlarge this 10–day period for filing a Motion to Reconsider. Accordingly, Appellee concludes that HUD's Motion to Reconsider, which was filed on October 30, 1992, was null and void as untimely because it was filed more than 10 days after the court's Order of October 7, 1992.

■ Appellant argues, and this court agrees, that a "unique circumstances" exception to Rule 59 exists and is triggered by the filing of a Motion to Reconsider (Motion for New Trial) after the 10–day period where the moving party relied upon the court's Order extending that period of time. Indeed, the Supreme Court has indicated that if a court allows the filing of an otherwise untimely Motion for Reconsideration (Rule 59(e) Motion) and renders an adverse decision to mover on the merits, then the time for filing a Notice of Appeal begins from the date of entry of that Order. *Bowman v. Lopereno*, 311 U.S. 262, 61 S.Ct. 201, 85 L.Ed. 177 (1940); *see also Stauber v. Kieser*, 810 F.2d 1 (10th Cir.1982). Because Appellant filed its Notice of Appeal within 10 days from the denial of its Motion to Reconsider, which the court expressly allowed it to file in excess of 10 days from its Order, Appellant timely filed this Appeal.

### 2(A). *Federal Law Governs the Manner in Which HUD was Required to Perfect a Post–Petition Assignment of Rents*

■ This court's research has located no Fifth Circuit cases directly addressing the assignment of rents provision in HUD's mortgage and regulatory agreement. Persuasive authority from other Circuits, however, supports Appellant's position that federal law governs the manner in which HUD must perfect a security interest in post-petition assignment of rents. The leading case involving this issue is *U.S. v. Landmark Park and Associates,* 795 F.2d 683 (8th Cir.1986). Therein, the issue on appeal concerned whether state or federal law is the "applicable non-bankruptcy law" governing perfection of the security interest in rents and profits created under the Regulatory Agreement and Deed for Trust in favor of HUD. *Id.* at 684. Both the Bankruptcy court and District Court denied HUD's claim to post-petition rents because they found that HUD had failed to perfect its interest in the rents under applicable state law.

The *Landmark* court disagreed with the lower courts and held that HUD's bankruptcy claims included the rents collected by the debtor in possession during its post-petition operation of the mobile home park. By recording the loan documents containing the assignment of rents, HUD's security interest in the rents and profits was held to be perfected pre-petition. *Id.* at 687.

In the case at bar, the Bankruptcy Court below concluded that HUD's interest in the rents was determined by state recordation law. In support of its conclusion, the Bankruptcy Court cited *In re Village Properties, Ltd.,* 723 F.2d 441 (5th Cir.1984). This court finds *Village Properties* distinguishable because, unlike the present case, it did not involve a federal lender and application of non-bankruptcy federal law was not at issue. *See Landmark,* 795 F.2d at 685.

■ The *Landmark* court correctly noted that there is no uniformity in state law in perfecting a mortgagee's entitlement to rents. *Landmark,* 795 F.2d at 686. In *U.S. v. Kimbell Foods, Inc.,* 440 U.S. 715, 726, 99 S.Ct. 1448, 7457, 59 L.Ed.2d 711 (1979), the Supreme Court emphasized that federal law must govern the rights of the United States pursuant to federal nationwide lending programs. Realizing the need for uniformity of treatment of property interests concerning federal nationwide lending programs and "[i]n light of the idiosyncracies of state law and bankruptcy practice," the *Landmark* court concluded that a uniform federal rule was required to simplify the process by which federal lenders may enforce assignment of rents. *Landmark,* 795 F.2d at 687. Agreeing with the reasoning and holding of the *Landmark* case, this court finds that the Bankruptcy Court erred in failing to apply federal law to determine if HUD had perfected its security interest in its post-petition assignment of rents.

■ Federal law requires that state law be applied to determine if HUD had perfected its security interest in the real property, but federal law is to be applied to determine if HUD had perfected its security interest in the proceeds of the real property. Under federal law, HUD could perfect its interest in the rents by recording the loan documents containing the assignment of rents. *Landmark,* 795 F.2d 683, 687. In addition to *Landmark,* other courts have applied state law to determine that HUD had perfected its security interest in the immovable property and then applied federal law to determine that HUD had a perfected security interest in the rents therefrom. *In re Executive House Associates,* 99 B.R. 266 (Bankr. E.D.Pa.1989). In *Executive House,* the court held that the applicable federal rule is "that rent assignment provisions in HUD mortgages and Regulatory Agreements may be enforced according to their terms, and to the extent state law requires otherwise, that state law is replaced with this federal rule." *Id.* at 275.

■ There is simply no question that, pursuant to Louisiana law, HUD properly perfected its mortgage and regulatory agreement on the real property in question. *See* Bankruptcy Court's Memorandum Opinion at p. 4. Moreover, both the mortgage and the regulatory agreement contain express assignment of rents provisions. Pursuant to federal law, recordation of the loan documents

which provide for an assignment of rents provision automatically perfects HUD's interest in the rents of the apartments. In this case, the loan documents containing the rent assignments were filed in the mortgage records of Orleans Parish, Louisiana, on November 24, 1971. Because the terms of the loan documents provide that HUD is entitled to the proceeds immediately upon default, HUD was entitled to the project proceeds on June 1, 1988, the date Appellee defaulted.

Appellee's main argument against using federal law to determine if HUD perfected its interest in the proceeds is that if improper recordation of a security interest can substitute as a method for perfecting a security interest, then HUD may ignore Louisiana's law on recordation. This court is unpersuaded by Appellee's argument because the Bankruptcy Court already found that HUD properly recorded, under Louisiana law, its mortgage and regulatory agreement. Therefore, HUD did not and cannot simply ignore Louisiana's law on recordation. However, under federal law, HUD's proper recordation of loan documents governing immovable property pursuant to Louisiana law was all that HUD was required to do to perfect its security interest in the apartment proceeds. Because HUD did in fact do this, the Bankruptcy Court erred in finding that HUD did not comply with Louisiana law concerning perfection of a collateral assignment of rents. Whether project rents come within the meaning of 11 U.S.C. § 363(a) depends on whether HUD holds a perfected security interest in these proceeds. Because this court holds that HUD did have a perfected security interest in the apartment proceeds; [1]

IT IS ORDERED that the decision of the Bankruptcy Court finding that HUD did not have a perfected security interest in the rents and income of the apartments be and is hereby **REVERSED.**

IT IS FURTHER ORDERED that this matter be and is hereby **REMANDED** to the Bankruptcy Court for further proceedings

consistent with this Opinion pursuant to 11 U.S.C. § 363.

---

1. Because this court finds that HUD had a perfected security interest in the apartment rents pursuant to federal law, the court declines to decide whether HUD had a perfected security interest in the proceeds under Louisiana law and whether the debtor in possession is a separate entity from the debtor for purposes of notice.